IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIG ASSET MANAGEMENT, INC., a
Michigan Corporation

                Plaintiff,

v.

HERBERT L. BIRCOLL as
OWNER/BENEFICIARY of the
HERBERT L. BIRCOLL IRA AND
TRUSTEE OF THE PATRICIA
BIRCOLL LIVING TRUST and
PATRICIA BIRCOLL as TRUSTEE
OF THE PATRICIA BIRCOLL
LIVING TRUST

                Defendants.

Case No. 13-cv-13213
Hon.
Magistrate Judge

| | |
|---|---|
| Gregory M. Kilby (P68266)<br>**WARNER NORCROSS & JUDD LLP**<br>111 Lyon Street, N.W., Suite 900<br>Grand Rapids, Michigan 49503<br>Phone: 616.752.2181<br>gkilby@wnj.com | Matthew W. Frank (P66028)<br>**FRANK & FRANK, P.C.**<br>30833 Northwestern Highway, Suite 205<br>Farmington Hills, Michigan 48334<br>Phone: 248.932.1440<br>mfrank@frankfirm.com |
| Jane M. Kogan (P73267)<br>**WARNER NORCROSS & JUDD LLP**<br>2000 Town Center, Suite 2700<br>Southfield, Michigan 48075<br>Phone: 248.784.5139<br>jkogan@wnj.com | David M. Foster (P30041)[1]<br>**DAVID M. FOSTER, P.C.**<br>30833 Northwestern Highway, Suite 209<br>Farmington Hills, Michigan 48334<br>Phone: 248.855.0940<br>DavidFosterlaw@aol.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

[1] Mr. Foster is currently suspended from the practice of law but is expected to be reinstated in the near future and to resume his representation of Defendants.

1

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff CIG Asset Management, Inc. ("CIGAM"), by its attorneys Warner Norcross & Judd LLP, for its Verified Complaint against Defendants Herbert L. Bircoll, as the Owner/Beneficiary of the Herbert L. Bircoll IRA, and Herbert and Patricia Bircoll (the "Bircolls") as Trustees of the Patricia Bircoll Living Trust, states as follows:

**NATURE OF ACTION**

1. This is an action to enjoin an arbitration that the Bircolls initiated against CIGAM before the Financial Industry Regulatory Authority ("FINRA") on or about March 9, 2012, captioned *Herbert L. Bircoll IRA, et. al. v. CIG Asset Management, Inc., et. al.*, FINRA No. 12-00917 (the "FINRA Arbitration"). The Statement of Claim in the FINRA Arbitration is attached as **Exhibit A**.

2. In the FINRA Arbitration, the Bircolls seek to recover damages that they claim to have suffered as a result of three investments that they made in CIGAM accounts: ATEL XII, LLC, CIG CAM, LP and CIG PlenaStrategy Fund, LP. The first investment in ATEL XII, LLC is subject to FINRA jurisdiction – and thereby subject to mandatory FINRA arbitration – because it was sold through CIG Securities, Inc., a FINRA member broker-dealer. However, the Bircolls have made money (and continue to make money) on that particular investment. On the other hand, the remaining two investments – CIG CAM, LP and CIG

2

PlenaStrategy Fund, LP – are private placements, which although recommended by CIGAM, a Registered Investment Advisor ("RIA"), are sold by the funds themselves by way of a private offering and without any involvement from a FINRA member broker-dealer. Claims related to the two private placements are therefore not subject to FINRA's mandatory arbitration.

3. Despite this, the Bircolls allege in their Statement of Claim that FINRA jurisdiction against CIGAM is proper pursuant to the FINRA Code of Arbitration Procedure because CIGAM is a member of FINRA. (Ex. A, Stmt. of Cl. at ¶ 6.) This is not true. CIGAM is not a registered broker-dealer, and is not a member of FINRA.[2] Moreover, CIGAM did not agree to arbitrate any claims with the Bircolls. Accordingly, claims related to the two private placements that CIGAM sold in the Bircolls' accounts – CIG CAM, LP and CIG PlenaStrategy Fund, LP – are not subject to FINRA jurisdiction and/or arbitration.

4. Accordingly, CIGAM has persistently refused to participate in the FINRA Arbitration, and submitted an Answer to the Statement of Claim that enumerated the reasons why the Bircolls' claims are improper and must be dismissed. The Answer to the Statement of Claim in the FINRA Arbitration is attached as **Exhibit B**.

---

[2] FINRA Code of Arbitration Procedure for Customer Disputes Rule 12200 states that "members" and their customer must arbitrate a dispute if the customer requests it, and the dispute arises in connection with the member's business activities. *See* FINRA Rule 12200.

5. Nevertheless, the Bircolls continue to pursue their claims related to CIG CAM, LP and CIG PlenaStrategy Fund, LP in the FINRA Arbitration.

6. In order to avoid the harm that would result should CIGAM have to prepare for and participate in the impending hearing on the merits in the FINRA Arbitration, which is scheduled to commence on September 10, 2013, CIGAM was forced to file this action to enjoin the FINRA Arbitration.

7. Because FINRA is not the proper forum for the Bircolls to bring their claims against CIGAM with respect to their investments in CIG CAM, LP and CIG PlenaStrategy Fund, LP, this Court should declare that the dispute over those two investments is not arbitrable and enjoin the FINRA Arbitration.

## THE PARTIES

8. Herbert L. Bircoll, Owner of the Herbert L. Bircoll IRA and Trustee of the Patricia Bircoll Living Trust, resides at 3332 Parkland, West Bloomfield, Michigan 48322.

9. Patricia Bircoll, Trustee of the Patricia Bircoll Living Trust, resides at 3332 Parkland, West Bloomfield, Michigan 48322.

10. CIGAM is a Michigan Corporation, with its principal place of business located at 1000 Town Center, Ste. 2500, Southfield, Michigan 48075. CIGAM is a registered investment advisory firm registered with, and governed by, the SEC. CIGAM is not a FINRA member firm and is not subject to FINRA

oversight or jurisdiction. (*See* **Exhibit C**, CIGAM SEC Form ADV Uniform Application for Investment Adviser Registration; *see also* 15 U.S.C. § 78o(b)(8) (requiring only broker-dealers to maintain membership); Mary L. Schapiro, Chairman, U.S. Sec. & Exch. Comm'n, Address to New York Financial Writers' Association Annual Awards Dinner (June 18, 2009), *available at* http://www.sec.gov/news/speech/2009/spch061809mls-2.htm (last visited July 17, 2013) (discussing the disparate regulatory framework of broker-dealers and investment advisers).)

## THE OTHER CIG FAMILY COMPANIES

11. CIG Corp. is a Michigan Corporation, with its principal place of business located at 1000 Town Center, Ste. 2500, Southfield, Michigan 48075. CIG Corp. owns CIG Securities, Inc. and CIGAM.

12. CIG Securities, Inc. is a Michigan Corporation, with its principal place of business located at 1000 Town Center, Ste. 2500, Southfield, Michigan 48075. CIG Securities, Inc. is owned by CIG Corp. and is a securities broker-dealer registered with, and governed by, FINRA. (*See generally* 15 U.S.C. §78o(b)(8); 15 U.S.C. §78o-3(a); *see also* **Exhibit D**, FINRA CIG Securities BrokerCheck Report.)

13. Osman R. Minkara is dually registered as an investment advisor representative ("IAR") with CIGAM and a registered representative ("RR") with

CIG Securities. (*See* **Exhibit E**, SEC Investment Adviser Representative Public Disclosure Report for Osman Radwan Minkara; **Exhibit F**, FINRA Osman Radwan Minkara BrokerCheck Report.)

## JURISDICTION AND VENUE

14. This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.* and Federal Rule of Civil Procedure 57 and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims at issue in the FINRA Arbitration present a federal question. *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) ("[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law."). CIGAM's request for an injunction and declaratory judgment necessarily presents questions of federal law because the Bircolls' claims in the FINRA Arbitration include claims under Section 10(b) of the Securities Exchange Act of 1934 Securities and Exchange Commission Rule 10b-5 promulgated thereunder.

16. Furthermore, arbitrability – *i.e.*, whether a party has consented to arbitration – is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotations and citations omitted). "[I]t is properly within [a]

6

court's power to decide whether arbitration is appropriate and to enjoin or compel it as is appropriate." *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, No. JFM-11-2533, 2012 WL 113400, at *1 (D. Md. Jan. 12, 2012) (citing 9 U.S.C. §§ 9-11 and *PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998)).

17. This court has personal jurisdiction over the Bircolls because they reside in Oakland County, Michigan.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this lawsuit occurred within this judicial district.

## GENERAL ALLEGATIONS

### *FINRA Arbitration*

19. FINRA provides an arbitration forum for the resolution of certain disputes. Under FINRA Code of Arbitration Procedure for Customer Disputes Rule ("FINRA Rule") 12200, parties must arbitrate a dispute with FINRA if the dispute is between FINRA members, between a FINRA member and a customer, or if use of the FINRA arbitration forum is required by a written agreement or demanded by a customer of the FINRA member.

20. Under FINRA Rule 12504(a)(1), motions to dismiss to expose fatally-flawed claims "prior to the conclusion of a party's case in chief are discouraged in

7

arbitration." Indeed, under FINRA Rule 12540(a)(6) such motions can only be filed in extremely limited circumstances, which do not include moving to dismiss on statute of limitations grounds. And, under FINRA Rule 12504(a)(9)-(11), if the motion is denied, sanctions are automatically awarded against the moving party.

### *The Bircolls' Relationship with the CIG Family of Companies*

21. The Bircolls began their affiliation with Mr. Minkara and the CIG family of companies in 2005.

22. On December 1, 2005, the Bircolls executed a Client Agreement ("Agreement") with CIGAM. A copy of the Agreement is attached as **Exhibit G**. (*See also* Ex. A, Stmt. of Cl. at Ex. E.)

23. In the Agreement, CIGAM agreed to provide investment advisory services for a flat fee based upon the amount of the Bircolls' assets under CIGAM's management. (*See* Ex. G, Agreement at ¶ 7.)

24. The Agreement does **not** contain an arbitration provision whereby CIGAM (or any "Advisors" working for CIGAM, such as Mr. Minkara) agreed to submit any disputes to FINRA arbitration. (*See generally* Ex. G, Agreement.)

25. The Agreement is clear that Courts have jurisdiction to decide the parties' duties and/or obligations under the Agreement. (Ex. G, Agreement at ¶13(a)). The Agreement states in Section 13: "It is understood by the parties that if any term, provision, duty or obligation under the Agreement is held by the Courts

to be unenforceable, illegal or in conflict with applicable state law, the validity of the remaining portion shall not be affected . . . ." (*Id.*)

26. The Agreement is also clear that it is to be "construed under the laws of the State of Michigan in a manner consistent with the Investment Adviser Act of 1940 (the Act) and the rules and regulations of the Securities Exchange Commission." (*Id*. at ¶ 13(b).)

27. Additionally, on December 1, 2005, and in conjunction with the Agreement, the Bircolls entered into a separate fee agreement with CIGAM ("Wrap Fee Agreement"). A copy of the Wrap Fee Agreement is attached as **Exhibit H**. Pursuant to the Wrap Fee Agreement, CIGAM would be compensated on a monthly basis at ".55 bps of assets under management," an arrangement typical of an RIA and its client. (*Id.*) This fee is less than the 1.3 bps usually charged by CIGAM.

28. Neither the Agreement, nor the Wrap Fee Agreement, state that CIGAM would receive any additional payment for its services to the Bircolls. (*See generally id*. and Ex. G, Agreement.)

*The Investments*

29. The Bircolls' Statement of Claim makes allegations related to three different investments: ATEL XII, LLC, CIG CAM, LP and CIG PlenaStrategy Fund, LP. (Ex. A, Stmt. of Cl. at ¶ 23.)

9

30. ATEL XII, LLC is a publicly traded security and was sold to the Bircolls through CIG Securities, Inc., a broker-dealer subject to FINRA jurisdiction. A copy of the Bircolls' subscription agreement for the purchase of ATEL XII, LLC is attached as **Exhibit I** ("ATEL 12, LLC Subscription Agreement").

31. CIG CAM, LP and CIG PlenaStrategy Fund, LP, on the other hand, are investments sold by private placement. Copies of the private placement memoranda for CIG CAM, LP and CIG PlenaStrategy Fund, LP are attached as **Exhibits J and K** respectively. Unlike ATEL XII, the CIG CAM, LP and CIG PlenaStrategy Fund, LP investments were not sold through a registered broker-dealer but by the funds themselves by way of a private offering.

32. The Bircolls received offering documents for each of the three investments describing the nature of those investments. (*See* Ex. B, Ans. to Stmt. of Cl., at Exs. A, B, C.)

33. The Bircolls did not object to these investments at the time that the investments were made.

34. The investments in ATEL XII, LLC, CIG CAM, LP and CIG PlenaStrategy Fund, LP were purchased in the Bircolls' accounts between September of 2007 and January of 2009.

35. Specifically, the Bircolls invested:

10

(a) $100,000 in ATEL XII, LLC on June 9, 2008 by the Herbert L. Bircoll IRA;

(b) a total of $350,000 in CIG CAM, LP via a $100,000 initial investment by The Patricia Bircoll Living Trust on March 2, 2007, a $25,000 investment by The Patricia Bircoll Living Trust on August 24, 2007, a $125,000 investment by the Herbert L. Bircoll IRA on September 1, 2007, and an additional $100,000 investment by the Herbert L. Bircoll IRA on January 6, 2009; and

(c) $250,000 in the CIG PlenaStrategy Fund, LP on August 27, 2007 by the Herbert L. Bircoll IRA.

### *The 2008 Market Crash*

36. Beginning in September of 2008 with the collapse of Lehman Brothers, the market experienced a catastrophic and unexpected downward spiral. (*See* Ex. B, Ans. to Stmt. of Cl. at Ex. D.) The return on the investments in the Bircolls' accounts tailed the unfortunate market events and trends.

37. For example, Lehman Brothers was the prime broker for one of the funds in CIG PlenaStrategy Fund, LP. Thus, when Lehman Brothers declared bankruptcy, funds invested in CIG PlenaStrategy Fund, LP were tied up in bankruptcy court, and some funds remain tied up today. Rather than wait to see what monies could be collected from the bankruptcy, as recommended by CIGAM, the Bircolls elected to withdraw from CIG PlenaStrategy Fund, LP, foregoing any right to additional monies recovered from the Lehman Brothers bankruptcy proceedings.

38. Notably, however, the Bircolls have not incurred any losses associated with their investment in ATEL XII, LLC. Instead, their $100,000 initial investment remains intact and they have received a monthly distribution of $750.00 on their investment since July of 2008. A copy of the Bircolls' disbursement schedule that was subpoenaed and received from ATEL XII, LLC is attached as **Exhibit L** ("ATEL XII, LLC Disbursement Schedule").

### *The FINRA Arbitration*

39. Upon information and belief, the Bircolls commenced the FINRA Arbitration to hedge the losses that their investments suffered during this period of turmoil.

40. Instead of suing on their entire investment portfolio with the CIG companies – on which they made capital gains of nearly $200,000 – the Bircolls' cherry-picked three specific investments they now claim were unsuitable: the aforementioned ATEL XII, LLC, CIG CAM, LP and CIG PlenaStrategy Fund, LP investments. (*See generally* Ex. A, Stmt. Of Cl.)

41. The Bircolls' claims related to CIG CAM, LP and CIG PlenaStrategy Fund, LP are not subject to FINRA arbitration because both of the private placements were recommended to the Bircolls by CIGAM and sold directly by the issuer, not through a broker-dealer.

*CIGAM's Response to the FINRA Arbitration*

42. Despite being a named Respondent in the FINRA Arbitration, CIGAM has steadfastly refused to participate in the FINRA Arbitration. CIG Securities submitted an Answer to the Statement of Claim that enumerated the reasons why the Bircolls' claims are improper and must be dismissed and clearly stated that CIGAM would not participate in the FINRA Arbitration. (*See* Ex. B, Ans. to the Stmt. of Cl., at p. 1 fn. 1, p. 3.)

43. Nevertheless, the Bircolls continue to pursue their claims related to CIG CAM, LP and CIG PlenaStrategy Fund, LP in the FINRA Arbitration, and in order for CIGAM to avoid the harm that would result should it have to prepare for and participate in the hearing on the merits, CIGAM was forced to file this action to enjoin the FINRA Arbitration.

## COUNT I – DECLARATORY JUDGMENT

44. CIGAM incorporates the above paragraphs as if fully restated here.

45. This Court has the authority to determine the threshold question of whether the parties agreed to arbitrate. Accordingly, this Court, not the FINRA arbitration panel, determines the arbitrability of the Bircolls' claims.

46. Pursuant to Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes, which governs the arbitrability of disputes by FINRA, parties must arbitrate disputes only where each of the following conditions is met:

(1) arbitration is required by an agreement or requested by the customer, (2) the dispute is between a customer and a member of associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person. These conditions are not met with respect to the parties' dispute in the FINRA Arbitration.

47. CIGAM is not a member of FINRA and did not agree to arbitrate any disputes with the Bircolls in the Agreement (or any other agreements).

48. FINRA Arbitration against CIGAM is improper.

49. Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

50. As alleged here, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties. Plaintiffs, therefore, request a declaratory judgment from this Court pursuant to 28 U.S.C. §§ 2201 *et seq*. and Federal Rule of Civil Procedure 57 that CIGAM has no obligation to arbitrate the Bircolls' claims before FINRA.

## **COUNT II – FOR INJUNCTIVE RELIEF**

51. CIGAM incorporates the above paragraphs as if fully restated here.

52. The Bircolls have asserted claims for damages against CIGAM in the FINRA Arbitration and, unless enjoined, will continue to pursue such claims to judgment.

53. Unless the Bircolls are enjoined from pursuing their claims in the FINRA Arbitration, CIGAM will suffer irreparable harm because it will be forced to incur the expense of defending itself in the arbitration proceeding in which the Bircolls seek significant damages, even though CIGAM is not legally compelled to arbitrate the Bircolls' claims. Among other things, and unlike in Count I where CIGAM is likely to prevail on a pre-discovery motion to dismiss, FINRA rules do not permit motions to dismiss (except in limited circumstances), until the parties engage in discovery and the claimant puts on its case-in-chief. Being compelled to arbitrate a dispute one has not agreed to arbitrate is irreparable harm as a matter of law.

54. CIGAM has no adequate remedy at law because any post-arbitration challenge by CIGAM to an arbitrator's award would still require it to defend itself in an arbitration proceeding to which it did not consent.

55. The Bircolls will suffer no harm in the event an injunction issues.

56. The balance of equities weighs in favor of an injunction.

57. The public interest would be served by enjoining the Bircolls from pursuing their claims against CIGAM in the FINRA Arbitration which CIGAM is not legally bound to arbitrate.

## PRAYER FOR RELIEF

WHEREFORE, CIGAM respectfully requests that this Court enter an order:

(1) Declaring that FINRA lacks jurisdiction over CIGAM in the FINRA Arbitration;

(2) Preliminarily and permanently enjoining the Bircolls from pursuing their claims related to CIG CAM, LP and CIG PlenaStrategy Fund, LP in the FINRA Arbitration;

(3) Awarding CIGAM its costs of suit; and

(4) Granting such other relief as may be just and proper.

**WARNER NORCROSS & JUDD LLP**

Date: July 26, 2013         By:   */s Jane M. Kogan*
                                    Jane M. Kogan (P73267)
                                    2000 Town Center, Suite 2700
                                    Southfield, Michigan 48075
                                    Phone: 248.784.5193
                                    Facsimile: 248.603.9793
                                    jkogan@wnj.com

                                    Gregory M. Kilby (P68266)
                                    900 Fifth Third Center
                                    111 Lyon Street, N.W.
                                    Grand Rapids, Michigan 49503
                                    Phone: 616.752.2181
                                    Facsimile: 616.222.2181
                                    gkilby@wnj.com

                                    Attorneys for Plaintiff

## **VERIFICATION**

STATE OF MICHIGAN )
)ss
COUNTY OF OAKLAND )

  Osman Minkara, first being duly sworn, deposes and says that he is the President of CIG Asset Management, Inc., that he has read the foregoing Verified Complaint and knows the contents thereof and the same are true and accurate to the best of his knowledge.

_____
Osman R. Minkara

Subscribed and sworn to before me
in Oakland County, on the 24th
day of July, 2013.

_____

Notary Public, Macomb County, MI
My commission expires: 1/29/2014
Acting in the County of Oakland

Mary Ann Brousseau
Notary Public of Michigan
Macomb County
Expires 01/29/2014
Acting in the County of Oakland

17